UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Edward Hanratty
The Tomes Law Firm
150B Tices Lane
East Brunswick NJ 08816
732-257-0601

In Re:
Richard Vincent and Jennifer Susan Patrick

Robert & Louise Hughes

v.

Richard Vincent Patrick, Jennifer Susan Patrick, John Does 1-10

Case No.: 10-14425

Chapter 7

AP#

# COMPLAINT

Now comes Plaintiffs, by and through their attorney, and by way of complaint contesting the dischargeability of certain debts pursuant to 11 U.S.C. 523, say:

## I
## JURISDICTION

1. This court has jurisdiction over this matter under 28 U.S.C. ss 1334(a) and 157(b) and the Standing Order of the United States Distirct Court, dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court.

2. Venue is proper in this court pursuant to 28 U.S.C. ss 1409(a).

3. This matter is a core proceeding within the meaning of 28 U.S.C. ss 157(b)(2)(I).

4. Plaintiffs are creditors and as such have standing to bring this action.

5. Defendants are the debtors in the above captioned action and affiliated entities that may have liability to Plaintiffs in this matter.

## FACTS

6. Plaintiffs are high school graduates residing in Sayreville, New Jersey, who met Richard Patrick when he worked at Sovereign Bank in the 1990's. At that time, they had about $5,000 to invest and purchased some mutual funds seeing that as an investment with minimal risk.

7. Plaintiff's son died in the September 11, 2001, tragedy. Plaintiff's received $1.3 million dollars in compensation from the Victim's Compensation Fund.

8. Being unsophisticated investors, Plaintiffs invested the money with Richard Patrick, the only investment advisor they had ever had. Patrick had become a close family friend over the years since the couple's initial investment. They often dined together and attended family functions together.

9. The $1.3 million was initially invested in mutual funds, along with the proceeds of the sale of the Plaintiff's home.

10. In 2006, while acting as the Plaintiffs investment advisor, Richard Patrick solicited an investment from them of $150,000 for a company called 3-D Transoms, which was to manufacture high-end boat accessories such as furniture, of which Patrick was president.

11. There is no information about this company disclosed in the Debtor's petition, even though it apparently existed within 6 years of order for relief.

12. 3-D Transoms was transformed in to Blue Water Signatures, LLC, with Richard Patrick also as president, and Plaintiffs consented to the investment due to the relationship of trust that had grown between the parties over the years.

13. What had originally been solicited as an investment was now characterized as a loan, with a note setting forth the terms, dated January 1, 2007.

14. Plaintiffs were told by defendant that the investment was safe and conservative, in line with the same investment objectives they had had for the entire course of the relationship.

15. No payments were ever made on this note, and no proceeds ever received from the investment.

16. Richard Patrick was debarred by the Financial Industry Regulatory Authority in 2008 for engaging in this transaction with Plaintiffs.

17. Richard Patrick knew or should have known at the time he made the statement that the funds he solicited form Plaintiffs were not "safe". His reckless disregard for the truth about the risk to the Plaintiff's along with his manipulation of the long close relationship between the parties and the Plaintiff' relative lack of sophistication caused Plaintiff's to engage in this illegal transaction to their detriment.

18. Since Richard Patrick received Plaintiff's money, there has not been a single payment made or any return on the investment.

19. In 2008, Patrick approached the Plaintiffs about making an additional investment in Blue Water Signatures. The Plaintiffs contacted their investment advisor, who had been selected by Patrick to replace him after he had solicited the original investment form Plaintiffs. That advisor told Plaintiffs that Blue Water Signatures was not actually transacting any business, and that Patrick had violated securities industry regulations by soliciting the $150,000 from his then clients, the Plaintiffs.

20. Debtors had repeatedly asked for payment on the existing loan, financial information about the company and other information, and received none.

21. Based on the facts they knew at the time, Plaintiffs refused to allow Patrick to withdraw more money from their accounts.

22. Shortly after Plaintiffs told Patrick that there would be no more money from them, Patrick told them that there had been a fire at the Blue Water Signature facilities, and there was no applicable insurance.

23. Richard Patrick, or his co-debtor, are members of at least 4 other LLC's in New Jersey.

24. The only project the debtor indicates as "completed" in a January, 2008 letter to Plaintiffs, was one for one of the other entities he controls. This was the only "report" Plaintiff's ever got from the debtor.

25. Plaintiffs never got any information about the profitability of the company, what use the funds were put to, or any other information other than a brochure from a boat show.

26. Plaintiff's gave the debtor $150,000, other listed creditors for Blue Water Signatures, Dan Aufiero and Joe and June McNulty, gave $25,000 and $450,000, respectively. A total of $625,000 spent by the debtor allegedly making boat furniture.

27. Richard Patrick diverted the funds intended as an investment in Blue Water Signatures LLC to his own purposes without the authority to do so.

28. Richard Patrick, as President of Blue Water Signatures LLC, owed a fiduciary duty to its creditors. Especially the creditors with whom he had established a special relationship of trust over many years, acting as a trusted advisor. There is not information in Plaintiff's possession that the company was ever solvent (that its assets were greater than it liabilities).

29. Blue Water Signatures was never a solvent company. Patrick took money from his brokerage clients based on false statements that it was an investment in his personally controlled limited liability company, Blue Water Signatures.

30. As Blue Water Signatures was insolvent, Patrick owed a duty to its creditors to not deepen the insolvency, but rather to preserve its assets. By failing to have proper insurance in place, by continuing to operate deepening the insolvency, Patrick breached that duty.

## III

### CAUSES OF ACTION

#### A.
**THE DEBT SHOULD NOT BE DISCHARGED DUE TO THE DEBTORS' FRAUD**

31. Each allegation set forth above is hereby incorporated by reference as if set forth herein at length.

32. The debt should not be discharged as discharge is proscribed by 11 U.S.C. 523 (2)(A).

Wherefore, Plaintiffs demand judgment against Debtors that the debt to Plaintiffs is non-dischargeable and any other relief that this court deems equitable and just.

## B.
## THE DEBT SHOULD NOT BE DISCHARGED BECAUSE THE DEBTOR WAS A FIDUCIARY TO THE PLAINTIFFS AND HIS DEFALCATION CREATED THIS DEBT

33. Each allegation set forth above is hereby incorporated by reference as if set forth herein at length.

34. The debt should not be discharged as discharge is proscribed by 11 U.S.C. 523 (4).

Wherefore, Plaintiffs demand judgment against Debtors that the debt to Plaintiffs is non-dischargeable and any other relief that this court deems equitable and just.

## C.
## THE DEBT SHOULD NOT BE DISCHARGED BECAUSE IT IS THE PRODUCT OF A BREACH OF SECURITIES LAWS AND REGULATIONS

35. Each allegation set forth above is hereby incorporated by reference as if set forth herein at length.

36. The debt should not be discharged as discharge is proscribed by 11 U.S.C. 523 (19).

Wherefore, Plaintiffs demand judgment against Debtors that the debt to Plaintiffs is non-dischargeable and any other relief that this court deems equitable and just.

Dated: 5/25/10                                                      By:/s/ Edward Hanratty 5750